## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BILLY JOSEPH FAYE**                                    **CIVIL ACTION**

**VERSUS**                                               **NO. 16-17730**

**DARREL VANNOY, WARDEN**                                **SECTION "N"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.     Factual and Procedural Background

The petitioner, Billy Joseph Faye ("Faye"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On December 14, 2011, Faye was indicted by a Terrebonne Parish Grand Jury for one count of armed robbery.[3]

The record reflects that, on September 14, 2011, a man wearing a welder's cap and sunglasses walked into the Plaza Latina grocery store on Grand Caillou Road in Houma, Louisiana.[4] When the last customers left the store, the man approached the cashiers, Maribel

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 3, Indictment, 12/14/11; Grand Jury Return, 12/14/11.

[4]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Faye*, No. 2013-KA-1295 c/w 2013-KA-1296, 2014 WL 644757, at *1 (La. App. 1st Cir. 2014); St.

Gutierrez and Genesis Cartini, and said, "[T]his is a robbery." He unbuttoned his shirt to reveal the handle of a gun in his waistband. When Cartini, who did not speak English, did not respond, the man touched the gun. Gutierrez explained to Cartini in Spanish that they were being robbed. Cartini then took $196.00 from the cash register and placed it in a plastic shopping bag. The man took the bag containing the money, left the store, and got into a green Nissan Sentra driven by a woman. Gutierrez called 911 and described the man as a 5'7" white male with a beard, wearing glasses, and carrying a gun.

The Houma Police Department provided the media with a still photograph of the green Sentra taken from surveillance footage obtained from the nearby East Houma Library. About two weeks after the robbery, a Crime Stoppers tip implicated Faye as a suspect and indicated that Faye's girlfriend, Catherine Castilo, owned a green Nissan Sentra. Houma Police Detective Travis Theriot showed Gutierrez a six-person photographic lineup, which included a photo of Faye, and she immediately identified Faye's photograph as the person who robbed her.

Detective Theriot arrested Faye in Picayune, Mississippi, at his parole officer's office. He also interviewed Castilo, who had traveled to Mississippi with Faye after the robbery, and was living with Faye in a Pascagoula motel room. Castilo identified the Sentra in the still photo as hers, and identified the robber in the Plaza video footage as Faye. Castilo asked Detective Theriot if he wanted the gun and the boots that were used in the robbery, and gave consent to search the motel room. Detective Theriot seized a pair of steel-toe boots, a welding cap, and a BB handgun. Castilo testified at trial that Faye frequently drove her car, and that he used her car on the day of the robbery. She also admitted that she had prior convictions for forgery and theft. Castilo was not implicated in the armed robbery.

---

Rec. Vol. 2 of 3, 1st Cir. Opinion, 2013-KA-1295 c/w 2013-KA-1296, pp. 2-3, 2/18/14.

Faye, representing himself, was tried by the Trial Court without a jury on July 24, 2012, and found guilty as charged.[5] The Court denied Faye's motion for a new trial at an August 20, 2012, hearing.[6] The Court sentenced Faye on August 24, 2012, to serve fifty (50) years in prison.[7]

On May 10, 2013, Faye signed and submitted a pleading captioned as an application for post-conviction relief to the state trial court requesting that he be granted an out of time appeal.[8] The Trial Court denied the application because it was not presented on the proper form.[9] Faye submitted a Uniform Application for Post-Conviction Relief on June 5, 2013, seeking the same relief.[10] The Trial Court granted the request for leave to file an out-of-time appeal on June 17, 2013.[11]

On appeal to the Louisiana First Circuit Court of Appeal, Faye's appointed counsel asserted that the identification evidence was insufficient to support the verdict.[12] On February 18, 2014, the Louisiana First Circuit affirmed Faye's conviction and sentence finding no merit in the claim.[13] The Court also denied Faye's request for rehearing on March 19, 2014.[14]

---

[5]St. Rec. Vol. 2 of 3, Trial Minutes, 7/24/12; Minute Entry, 6/21/12; Trial Court Order, 6/21/12; Motion to Waive Trial by Jury, 6/21/12; Hearing Transcript, 6/21/12; Hearing Transcript (2), 6/21/12; Minute Entry, 5/14/12; St. Rec. Vol. 3 of 3, Trial Transcript, 7/24/12.

[6]St. Rec. Vol. 2 of 3, Hearing Minutes, 8/20/12; Hearing Transcript, 8/20/12; Motion for New Trial, 8/9/12.

[7]St. Rec. Vol. 2 of 3, Sentencing Minutes, 8/24/12; Sentencing Transcript, 8/24/12.

[8]St. Rec. Vol. 2 of 3, Application for Post-Conviction Relief, 5/20/13 (dated 5/10/13).

[9]St. Rec. Vol. 2 of 3, Trial Court Order, 5/21/13.

[10]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 6/10/13 (dated 6/5/13).

[11]St. Rec. Vol. 2 of 3, Trial Court Order, 6/17/13.

[12]St. Rec. Vol. 2 of 3, Appeal Brief, 2013-KA-1295 c/w 2013-KA-1296, 8/14/13.

[13]*Faye*, 2014 WL 644757, at *1; St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 2013-KA-1295 c/w 2013-KA-1296, 2/18/14.

[14]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2013-KA-1295 c/w 2013-KA-1296, 3/19/14; 1st Cir. Application for

The Louisiana Supreme Court denied Faye's related writ application without stated reasons on October 3, 2014.[15] Faye's conviction was final under federal law ninety (90) days later, on January 1, 2015, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1); *see also*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (a state defendant's conviction is not final for purposes of seeking federal habeas review until the conclusion of the out of time appeal process).

Faye signed and submitted another application for post-conviction relief to the Trial Court on March 24, 2015, asserting the following grounds for relief:[16] (1) he was denied effective assistance of stand-by trial counsel during pretrial proceedings and the appointed stand-by counsel thereafter provided no assistance; (2) he received ineffective assistance of counsel on appeal when counsel failed to assert a Confrontation Clause violation and his inability to impeach Castilo's perjured testimony at trial; (3) the Trial Court erred when it allowed prejudicial testimony from a State witness to be admitted at trial and for denying his motion for new trial; and (4) he was denied the right to confront a State witness whose out of court statement was used at trial.

The Trial Court denied relief on May 5, 2015, initially finding that the claims were untimely asserted under La. Code Crim. P. art. 930.4.[17] Alternatively, the Court held that Faye's third and fourth claims were barred from post-conviction review under La. Code Crim. P. art.

---

Rehearing, 2013-KA-1295 c/w 2013-KA-1296, 3/6/14 (dated 2/28/14).

[15]*State v. Faye*, 149 So.3d 794 (La. 2014); St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2014-KO-505, 3/12/14.

[16]St. Rec. Vol. 2 of 3, Application for Post-Conviction Relief, 3/27/15 (dated 3/24/15).

[17]St. Rec. Vol. 2 of 3, Trial Court Order, 5/5/15.

930.4(C) and his ineffective assistance of trial and appellate counsel had no merit under *Strickland v. Washington*, 466 U.S. 688 (1984) and related case law.

The Louisiana First Circuit denied Faye's writ application without stated reasons on August 21, 2015.[18] The Louisiana Supreme Court also denied Faye's related writ application on November 15, 2016, finding the ineffective assistance of counsel claims to have no merit under *Strickland* and the remaining claims repetitive and/or unsupported under La. Code Crim. P. arts. 930.2, 930.4.[19]

## II.  Federal Habeas Petition

On December 20, 2016, the clerk of this Court filed Faye's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[20] (1) he was denied effective assistance of counsel when he was not given counsel during pretrial proceedings and the appointed stand-by counsel thereafter provided no assistance; (2) he received ineffective assistance of counsel on appeal when counsel failed to assert a Confrontation Clause violation and his inability to impeach Castilo's perjured testimony at trial; (3) the Trial Court erred when it allowed prejudicial testimony from a State witness to be admitted at trial and denied his motion for new trial; (4) he was denied the right to confront a State witness whose out of court statement was admitted at trial; and (5) the identification evidence was insufficient to prove he committed the crime charged.

---

[18]St. Rec. 2 of 3, 1st Cir. Order, 2015-KW-0891, 8/21/15; St. Rec. Vol. 1 of 3, 1st Cir. Writ Application, 2015-KW-0891, 6/3/15 (dated 6/2/15).

[19]*State ex rel. Faye v. State*, 206 So.3d 178 (La. 2015); St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2015-KH-1695, 9/16/15; St. Rec. Vol. 1 of 3, La. S. Ct. Writ Application, 15-KH-1695, 9/15/15 (dated 9/8/15).

[20]Rec. Doc. No. 1.

The State filed a response in opposition to Faye's petition asserting that the petition was timely filed and the claims were presented to each level of the state courts.[21]  The State further contends that Faye is not entitled to relief on his claims.

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on December 20, 2016.[23]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Faye's federal petition was timely filed and he exhausted state court review.  However, the record reflects that two of Faye's claims are in procedural default and barred from review by this federal court.  For the reasons that follow, Faye's

---

[21]Rec. Doc. No. 12.

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Faye's petition on December 20, 2016, when it was received with his pauper application, which later was denied.  According to the official stamp of the prison, Faye delivered his pleadings to prison officials on December 20, 2016, for electronic mailing to this Court, which was done that same day.  Rec. Doc. No. 2, p. 1.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

third and fourth claims are procedurally barred and he is not entitled to relief on the remaining three claims.

## IV.    Procedural Default (Claim Nos. 3 & 4)

The Louisiana Supreme Court denied Faye relief on two of his post-conviction claims (here Claim Nos. 3 and 4 challenging certain testimony and the denial of the motion for new trial) as repetitive under La. Code Crim. P. art. 930.4.  Specifically, as noted by the state courts, La. Code Crim. P. art. 930.4(C) prohibits post-conviction review of a claim when it was inexcusably not pursued on direct appeal.

In this case, the State did not address in its opposition response the procedural bar imposed by the state courts or even acknowledge the reasons given in support of the state courts' rulings. The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. *Nobles*, 127 F.3d at 420.  This court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered.  *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006); *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).  Accordingly, **Faye is hereby specifically instructed that this report and recommendation is notice to him that this Court is *sua sponte* raising the issue of procedural default and that Faye must submit any evidence or argument concerning the default as part of any objections he may file to this report.  *Magouirk*, 144 F.3d at 348.**

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338

& n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The state courts declined to review Faye's claims based on La. Code Crim. P. art. 930.4(C). The Court will consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of Faye's claims challenging Castilo's perjured testimony and admission of Cartini's out of court statement, and the denial of his motion for new trial based on both.

## A. Independent and Adequate State Grounds

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher*, 169 F.3d at 300.

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 316 (2011); *Glover*, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

The question of the adequacy of a state procedural bar is itself a federal question. *Beard*, 558 U.S. at 60 (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).

The Louisiana Supreme Court relied on La. Code Crim. P. art. 930.4(C) to bar the claims that were inexcusably not raised on appeal. Under the circumstances of this case, the provisions of Article 930.4(C) are independent and adequate to bar federal review of Faye's claims. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is an independent and adequate state procedural rule); *Coleman v. Cain*, No. 07-3655, 2014 WL 348541, at *11 (E.D. La. Jan. 31, 2014) (Milazzo, J.) (Article 930.4(B)&(C)); *Johnson v. Cain*, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.4(C)); *Perez v. Cain*, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct. 10, 2012) (Barbier, J.) (Article 930.4(C)); *see also*, *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The state courts' rulings were based on Louisiana law setting forth the procedural requirements for the presentation of post-conviction claims. *See*, *Fisher*, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state courts' reasons for dismissal of Faye's claims were therefore independent of federal law and adequate to bar review of his claims in this federal habeas court.

**B.    CAUSE AND PREJUDICE**

A federal habeas petition may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Fisher*, 169 F.3d at 301 (citing *Coleman*, 501 U.S. at 748-50); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486. Thus, any assertion by Faye that his appellate counsel should have raised the claims is not compelling, and furthermore, as discussed later in this report, is not indicative of any deficient performance by his appellate counsel to excuse the default.

In this case, Faye has offered no cause for the default that would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Faye from raising the defaulted claims in a procedurally proper manner. The record reflects no action or inaction by the State which prevented him or his counsel from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Faye's defaulted claims therefore are procedurally barred from review by this federal habeas court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with

state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[24]

## C.      FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); accord *Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Faye presents no argument and the record contains nothing to establish his actual innocence on the underlying conviction. For these reasons, he has failed to overcome the procedural bar to his claims, and his third and fourth claims (the Trial Court erred when it admitted prejudicial testimony and denied his motion for new trial, and he was denied the right to confront a State

---

[24]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte*. *Id*.

witness whose statement was admitted at trial) must be dismissed with prejudice as procedurally barred.

## V.     Standards of a Merits Review of the Remaining Claims

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly

established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    <u>Effective Assistance of Counsel (Claim Nos. 1 & 2)</u>

Faye alleges that he was denied the assistance of counsel when the Trial Court did not provide him with counsel during the initial pretrial proceedings. He further claims that, once he was appointed assistance, his stand-by counsel was ineffective on multiple grounds, including the following: (1) failed to assist him in accordance with *Faretta v. California*, 422 U.S. 806 (1975); (2) failed to investigate witnesses and other evidence; (3) failed to assist or aid with courtroom procedure and rules of court; (4) failed to share evidence with petitioner, including witness interviews and testimony of Castilo and others; (5) failed to obtain Castilo's NCIC rap sheet from prosecutor; (6) failed to object to the prejudicial testimony by Castilo; (7) failed to subpoena the eyewitnesses Cartini; (8) failed to appear at petitioner's sentencing; (9) failed to invoke the sequestration rule which allowed Detective Theriot to remain in the courtroom; (10) failed to assist or advise petitioner in any manner; (11) failed to conduct an inquiry to determine his conflict of interest; (12) failed to conduct adequate pretrial investigation, discovery, call and interview witnesses, request funds for expert assistance, and use the evidence to conduct cross-examination and impeachment of witnesses. Faye contends that these failings, coupled with the Trial Court's failure to assist him in his efforts to get counsel to assist, resulted in the constructive denial of counsel. He also alleges that he received ineffective assistance of counsel on appeal when his appointed counsel failed to assert his confrontation rights were violated and that he was unable to impeach witness testimony.

Faye asserted these claims arguments on state post-conviction review. The state trial court held that Faye did not prove that he received ineffective assistance because he waived his right to

assistance of counsel when he decided to represent himself. He also failed to establish that his stand-by counsel failed to fulfill his duties to guide him in courtroom proceedings under *Faretta* or *Strickland*. This holding was tacitly followed by the Louisiana First Circuit's denial of relief without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). The Louisiana Supreme Court also relied on *Strickland* to deny Faye's writ application on this claim.

## A. <u>Standards of Review under *Strickland*</u>

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 772 F.2d 358, 369 (5th Cir. 2014). Thus, under the AEDPA, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-

88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at

112.  In making a determination as to whether prejudice occurred, courts must review the record

to determine "the relative role that the alleged trial errors played in the total context of [the] trial."

*Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of

ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a

constitutional issue sufficient to support federal habeas relief.  *Miller*, 200 F.3d at 282 (citing *Ross*

*v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying

*Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence

under prevailing professional norms, not whether it deviated from best practices or most common

custom."  *Harrington*, 562 U.S. at 105.  The *Harrington* Court went on to recognize the high level

of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of

review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so.  The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial.  Federal habeas
> courts must guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is
> not whether counsel's actions were reasonable.  The question is whether there is
> any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal

courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard

through the "deferential lens of § 2254(d)."  *Id*. (citing *Strickland*, 466 U.S. at 689, and quoting

*Knowles*, 556 U.S. at 121 n.2).

## B.     Counsel at the State Trial Level

The record reflects that Faye was assigned counsel from the public defender's office at his initial appearance on October 4, 2011.[25] He remained incarcerated and was indicted by the Grand Jury on December 14, 2011 under Case No. 627669.[26] He next appeared before the state trial court on January 13, 2012, for the determination of counsel at which time he apparently announced that he wanted to represent himself.[27] The Court nevertheless maintained the appointment of the public defender's office to represent Faye. Faye thereafter appeared before the Court on March 12, 2012, May 14, 2012, and June 14, 2012, accompanied by his appointed counsel, Assistant Public Defender Kerry Byrne.[28]

On June 21, 2012, Faye filed a formal motion to proceed on his own behalf.[29] The Trial Court held a *Faretta* hearing, granted the request, appointed Byrne to act as stand-by counsel, and accepted Faye's motion for a bench trial.[30] Faye also at that time entered a plea of not guilty to the indictment in Case No. 627669. The transcript further reflects that, as of that date, Byrne had conducted extensive open file discovery and already provided Faye with a full copy.[31]

---

[25]St. Rec. Vol. 2 of 3, Minute Entry, 10/4/11.

[26]St. Rec. Vol. 2 of 3, Indictment, 12/14/11; Grand Jury Return, 12/14/11.

[27]St. Rec. Vol. 2 of 3, Minute Entry, 1/13/12.

[28]St. Rec. Vol. 2 of 3, Minute Entry, 3/12/12; Minute Entry, 5/14/12 (showing that his criminal case was consolidated with another, Case No. 620769, per the motion of stand-by counsel); Minute Entry, 6/14/12 (*Faretta* hearing requested and set).

[29]St. Rec. Vol. 2 of 3, Hearing Transcript, p. 4, 6/21/12.

[30]St. Rec. Vol. 2 of 3, Hearing Transcript, 6/21/12; St. Rec. Vol. 2 of 3, Minute Entry, 6/21/12.

[31]St. Rec. Vol. 2 of 3, Hearing Transcript, pp. 24-25, 6/21/12.

Faye thereafter represented himself at various pretrial hearings and trial, and his appointed stand-by counsel was present and participated at each.[32] The transcripts reflect that Faye's stand-by counsel assisted him in obtaining a myriad of discovery documents from the State and in gaining permission from prison officials to view a CD that was produced by the State.[33] The original CD obtained by counsel from the State contained surveillance video and a video of an interview with Castilo.[34] Because of technical difficulties, stand-by counsel obtained other CDs, one containing the surveillance videos and one with the Castilo interview.[35] Faye later declined the opportunity to listen to the Castilo interview when given the opportunity to do so by stand-by counsel.[36] Counsel also assisted Faye with preparing and presenting a request to the Trial Court to secure an out of state witness.[37] Faye's stand-by counsel also accompanied him at the post-trial motion hearing held on August 20, 2012, and made contributing remarks during argument on the record.[38] Contrary to Faye's claims, the record reflects that stand-by counsel was present at the sentencing.[39]

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.'" *Marshall v. Rodgers*, 569 U.S. 58, __, 133 S. Ct. 1446, 1449 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004), and citing *United States v. Cronic*, 466 U.S. 648, 653-654 (1984) and *Gideon v.*

---

[32]St. Rec. Vol. 2 of 3, Minute Entry, 7/9/12; Minute Entry, 7/23/12; Trial Minutes, 7/24/12.

[33]St. Rec. Vol. 2 of 3, Hearing Transcript, pp. 2-4, 7/9/12.

[34]St. Rec. Vol. 2 of 3, Hearing Transcript, pp. 3-4, 7/9/12.

[35]St. Rec. Vol. 2 of 3, Hearing Transcript, pp. 6-7, 8/20/12.

[36]St. Rec. Vol. 2 of 3, Hearing Transcript, p. 7, 8/20/12.

[37]St. Rec. Vol. 2 of 3, Hearing Transcript, pp. 4-12, 7/9/12; Petition for Certification, 7/10/12.

[38]St. Rec. Vol. 2 of 3, Hearing Transcript, 8/20/12; Minute Entry, 8/20/12.

[39]St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 1 (appearances), 8/24/12; Sentencing Minutes, 8/24/12.

*Wainwright*, 372 U.S. 335, 344 (1963)). A criminal defendant, however, also has the right to self-representation to "proceed without counsel when he intelligently elects to do so." *Faretta*, 422 U.S. at 807; *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013). The Supreme Court has held that that a defendant who represents himself must abide by courtroom rules and maintain proper to uphold the dignity of the courtroom. *See Faretta*, 422 U.S. at 834 n.46; *United States v. Long*, 597 F.3d 720, 726 (5th Cir. 2010) (upholding denial of the right to self-representation where the defendant had been disruptive in pretrial proceedings). To aid in this goal, a trial court can appoint stand-by counsel to assist the defendant (even over the defendant's objection), so long as stand-by counsel does not unduly impinge on the defendant's self-representation. *Id.* at 834 n.46; *McKaskle v. Wiggins*, 465 U.S. 168, 174-79 (1984). The courts have recognized, however, that there is <u>no</u> constitutional right to have <u>both</u> counsel and to represent one's self through a "hybrid representation" scheme. *McKaskle*, 465 U.S. at 182; *Randolph v. Cain*, 412 F. App'x 654, 658 (5th Cir. 2010). When a defendant makes a request to act as co-counsel or some version of hybrid representation, the protections discussed in *Faretta* do <u>not</u> apply. *Randolph*, 412 F. App'x at 658. "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle*, 465 U.S. at 168.

In this case, Faye first suggests that he was denied appointed counsel during the initial criminal proceedings before he formally was allowed to represent himself. Contrary to Faye's claims, the public defender's office was appointed to represent him at his initial appearance and that appointment was reiterated at his arraignment. He, therefore, had the full representation of the public defender's office from the outset, and his counsel appeared with him at each hearing

thereafter including the *Faretta* hearing. Any pleadings filed by Faye pro se during that time period were not because he was without counsel, but because he chose to file things despite appointed counsel.

The record also reflects that, while he represented Faye, the assigned assistant public defender, Kerry Byrne, conducted open file discovery, investigated the case with Faye's assistance and input, attempted to subpoena and locate witnesses, and was in contact with Faye even to the extent that he provided Faye with complete copies of the discovery returns. When Faye filed a formal motion to represent himself, the Trial Court appointed Byrne to remain as stand-by counsel only. The Court made clear at the *Faretta* hearing and again several times during trial, that stand-by counsel was there to answer questions when asked and assist Faye with courtroom procedure when necessary. Faye claimed he understood the distinction. The record does not support his claim of actual or constructive denial of counsel at any time. *See United States v. Griffin*, 324 F.3d 330, 364 (5th Cir. 2003) (finding no "constructive" denial of effective assistance of counsel with its corresponding presumption of prejudice where the record showed no complete absence of counsel, no actual conflict, no state interference, and defense attorney made opening statements, questioned government witnesses, and made a closing argument); *see Cronic*, 466 U.S. at 657 n.21 ("If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance.").

As for his claim that he received ineffective assistance from Byrne after the *Faretta* hearing, Faye has failed to establish his entitlement to relief. The federal courts have long recognized that once a defendant voluntarily waives his right to counsel and represents himself, he is prevented from asserting a claim of ineffective assistance of counsel. *See Faretta*, 422 U.S. at 834 n.46. The *Faretta* court made clear that, "a defendant who elects to represent himself <u>cannot</u>

thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" (emphasis added) *Id.* The Supreme Court has "emphasized that although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored.'" *Godinez v. Moran*, 509 U.S. 389, 400 (1993) (quoting *Faretta*, 422 U.S. at 834).

Thus, Faye's stand-by counsel had no duty to act on Faye's behalf in presenting matters to the state trial court. *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978) (noting that although a defendant has a constitutional right to represent himself, there is no right to hybrid representation, partly by counsel and partly by himself). In fact, the state trial court admonished Byrne before the start of trial to let Faye speak for himself.[40] The Court several times reminded Faye that Byrne was only there as stand-by counsel and would not act as regular counsel at any point in the trial.[41] The Court had additional, extensive discussions about Byrne's role with the prosecutor, Faye, and Byrne when Faye tried to have Byrne question him when he took the stand on his own behalf.[42]

Because his attorney was appointed as stand-by counsel only, Faye is not entitled to relief for any alleged ineffectiveness of stand-by counsel. *See United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998) (citing *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997)); *see United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (opining that, if defendant "had no right to standby counsel, it seems unlikely that standby counsel's failure to assist could be a violation of his Sixth Amendment rights"). Even so, the record is clear that Byrne was diligent in his role as stand-by counsel and remained vigilant in his efforts to assure Faye stayed on track during

---

[40]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 4-5, 7/24/12.

[41]St. Rec. Vol. 3 of 3, Trial Transcript, p. 5, 7/24/12.

[42]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 123-130, 7/24/12.

pretrial hearings and at trial.  While most of Faye's complaints about lack of assistance are conclusory, the few that are specific are contrary to the record.  For example, Byrne had no reason to assist Faye in invoking a sequestration rule against Detective Theriot.  The State moved pursuant to the La. Code Evid. art. 615 to have Theriot exempted from the sequestration order because he was the lead investigator for the state.[43]  Neither Faye nor his stand-by counsel had any legal basis to prevent Theriot from remaining in the courtroom under Louisiana law.  *See*, *e.g.*, *State v. Prater*, No. 2015-KA-0079, 2015 WL 6835423, at *11 (La. App. 1st Cir. Nov. 6, 2015).  As discussed above, Faye was provided with or offered full copies of all of the discovery obtained by Byrne from the State including Castilo's video statement.  He also was given Castilo's rap sheet before the start of trial by the State.[44]  There simply is no support for Faye's suggestion that Byrne acted outside of the scope of stand-by counsel and no basis for an ineffective assistance of counsel claim because Faye represented himself.

For these reasons, Faye is not entitled to relief on his claim of ineffective assistance of trial counsel.  The denial of relief by the state courts was not contrary to or an unreasonable application of federal law.

### C.    Appellate Counsel

Faye claims that his appointed appellate counsel failed to assert on appeal that he was denied his Confrontation Clause rights and the ability to impeach a witness's testimony.  He contends that he notified appointed appellate counsel of his desire to assert these claims, but counsel only argued insufficient evidence to the appellate court.

---

[43]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 8-9, 7/24/12.

[44]St. Rec. Vol. 3 of 3, Trial Transcript, p. 56, 7/24/12.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997). To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a non-frivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every non-frivolous available ground for appeal. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts*, 469 U.S. at 394). On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> non-frivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Appellate counsel has the discretion to exclude even a non-frivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel

will not be found constitutionally ineffective for failure to raise every conceivable issue. *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

As determined by the state courts, Faye has failed to establish that any of his claims would have been successful on appeal or that the actions of which he complained could be attributed to anyone but himself. For example, Faye contends that his confrontation rights were violated when Genesis Cartini's pretrial statement to police was introduced at trial though she was not called to testify. The Supreme Court has held that the "<u>prosecution</u> may not admit 'testimonial statements of a witness who [does] not appear at trial unless he [is] unavailable to testify, and the defendant ... had a prior opportunity for cross-examination.'" *Crawford v. Washington*, 541 U.S. 36, 59 (2004) (emphasis added). In this case, however, Cartini's statement was not presented by the State and neither the State nor Faye called Cartini to testify at trial. Instead, Faye introduced and had Detective Theriot read Cartini's statement at trial.[45] He used it in an effort to have Detective Theriot acknowledge discrepancies in her statement when compared to Maribel Gutierrez trial testimony. There is no Supreme Court or other precedent that would have required or compelled competent appellate counsel to raise a *Crawford* error when the <u>defendant</u> and not the State presented the challenged out of court statement at his own trial.

Faye also contends that appellate counsel should have challenged Castilo's testimony as perjury in light of her rap sheet which demonstrated a conflict in her testimony as to whether she had an outstanding arrest warrant. The record demonstrates that the State and Faye questioned Castilo about her prior convictions which Faye was given prior to trial.[46] Faye specifically asked Castilo about an outstanding warrant in St. Mary Parish. He had the opportunity and the rap sheet

---

[45]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 115-16, 7/24/12.

[46]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 56, 73, 74, 7/24/12.

at trial while he questioned her. He even argued to the Court that Castilo lacked credibility because of her record. The appellate court, however, would not have reassessed the credibility of Castilo or any trial witness on appeal. Thus, there was no compelling reason for reasonable appellate counsel to have asserted a claim challenging the credibility of a trial witness.

The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. Faye is not entitled to relief on this claim.

## VII.   Sufficiency of the Evidence (Claim No. 5)

Faye alleges that the State failed to prove his guilt because there was insufficient evidence to establish his identity as the perpetrator. His appointed appellate counsel asserted this claim on direct appeal arguing that the State failed to prove that Faye was the perpetrator, because there were no fingerprints taken from the getaway car, he did not have a full beard, and he could not be identified by police from the surveillance video. Relying on *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state case law, the Louisiana First Circuit held that the physical descriptions given by the victims, the recollection of certain identifiable clothing and characteristics, and the identifications made by the victims before and at trial were more than sufficient to establish Faye as the perpetrator of the armed robbery. This was the last reasoned state court opinion on the claim. *See Ylst*, 501 U.S. at 802.

Claims of insufficient evidence present a mixed question of law and fact. *Davila v. Davis*, No. 15-70013, 2016 WL 3171870, at *3 (5th Cir. May 26, 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

In Louisiana, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So.2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Faye challenges the sufficiency of the evidence to prove that he was a perpetrator in the armed robbery of the clerks at the Plaza Latina. In Louisiana, armed robbery is "the taking of

anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. Ann. § 14:64. A dangerous weapon is defined as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." La. Rev. Stat. Ann. § 14:2(3). Louisiana law recognizes that a gun is a dangerous weapon. La. Rev. Stat. Ann. § 14:64(A); *State v. Thomas*, 13 So.3d 603, 606 (La. App. 5th Cir. 2009).

Under Louisiana law, armed robbery is a general intent crime. *State v. Smith*, 23 So.3d 291, 297 (La. 2009). "General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. Rev. Stat. Ann. § 14:10(2). In Louisiana law, general intent "is shown by the very doing of the acts which have been declared criminal." (citation omitted) *State v. Oliphant*, 113 So.3d 165, 172 (La. 2013). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)).

In the instant case, Faye is not specifically contesting the sufficiency of the proof related to the essential statutory elements of the offense, but rather challenges the sufficiency of the evidence to prove his identification as the perpetrator of the crime. Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as a perpetrator. *State v. Draughn*, 950 So.2d 583, 593 (La. 2007); *State v. Thomas*, 192 So.3d 291, 303 (La. App. 5th Cir. 2016); *State v. Ingram*, 888 So.2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the State is required to negate

any reasonable probability of misidentification.  *Id.*  However, a positive identification by only

one witness is sufficient to support a conviction.  *State v. Williams*, 3 So.3d 526, 529 (La. App. 5th

Cir. 2008).  A positive identification by a victim, as well as the victim's testimony alone, also is

sufficient identification evidence regarding the crime committed against that victim.  *Holderfield*

*v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995) (citing *State v. Turner*, 591 So.2d 391 (La. App.

2d Cir. 1991)).

In this case, the two store clerks, Maribel Gutierrez and Genesis Cartini, gave similar

descriptions of the perpetrator to the police and identified Faye's picture in the photographic array

shown to them shortly after the robbery.[47]  Gutierrez also identified Faye at trial.[48]  She identified

Faye's gun and distinctive boots seized from his hotel room.[49]  She also recognized a photograph

of Castilo's green Nissan Sentra that Faye used during the robbery.[50]  Gutierrez explained that

when she reported the perpetrator as bald, she was referring to Faye's distinctive forehead visible

even with the welder's hat.[51]  She further explained that she never said that the perpetrator had a

full beard, only that he had a beard.[52]  The evidence also reflects that Faye had a goatee at the time

of the robbery.[53]

---

[47]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 31-33, 91-93, 7/24/12.

[48]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 28, 29, 7/24/12.

[49]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 30, 35-36, 7/24/12.

[50]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 37-38, 48, 59-61, 63, 64, 87, 7/24/12.

[51]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 42, 43, 7/24/12.

[52]St. Rec. Vol. 3 of 3, Trial Transcript, p. 46, 7/24/12.

[53]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 69, 76, 7/24/12.

His former girlfriend, Cathy Castilo, also identified Faye at trial and on the video surveillance shown at trial.[54] She further identified his gun and boots seized from their hotel room.[55]

The trial judge had before him more than sufficient evidence to establish that Faye was the person who committed the armed robbery. He had been identified by the victims in a photographic lineup and by the witnesses at trial. Despite his argument, he was identified as the person in the surveillance video of the robbery and entering and exiting Castilo's very identifiable green Nissan Sentra. The trial judge found the testimony and identification evidence to have been credible, something that was within his authority as the factfinder and which is not to be second-guessed by this court on habeas review. *Weeks*, 55 F.3d at 1062.

Faye has failed to establish that there was insufficient evidence under the *Jackson* standard to support the guilty verdict. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law. Faye is not entitled to relief on this claim.

## VIII. <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Billy Joseph Faye's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

---

[54]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 55, 65, 67-68, 82-83, 96-97, 7/24/12.

[55]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 66-67, 72, 83, 7/24/12.

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[56]

New Orleans, Louisiana, this 14th day of August, 2017.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[56]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.